## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARLES HAGEE,** | * | |
| **Plaintiff,** | * | |
| | | **Civil Action No. BPG-08-0570** |
| **v.** | * | |
| **FREDERICK H. BEALEFELD,** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM

This employment discrimination and retaliation lawsuit was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4.  Currently pending are defendant's Motion for Summary Judgment (Paper No. 28), plaintiff's Response and Memorandum to Motion for Summary Judgment (Paper No. 29), and defendant's Reply Memorandum in Support of His Motion for Summary Judgment (Paper No. 30).  No hearing is deemed necessary.  Local Rule 105.6.  For the following reasons, defendant's Motion for Summary Judgment is GRANTED.

I.      Background

Plaintiff Charles Hagee, a Detective with the Baltimore City Police Department ("BPD"), initiated this action against the Mayor and City Council of Baltimore City and BPD Commissioner Frederick H. Bealefeld.  (Paper No. 1.)  Plaintiff, a Caucasian male, alleges that he suffered racial and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  (Id. at 1.)  Specifically, plaintiff asserts that he

was disciplined for alleged misconduct more harshly than African-American and female officers

were disciplined for similar misconduct.  (Id. at 2-5.)  Plaintiff also claims that when he filed a

complaint with the Equal Employment Opportunity Commission ("EEOC") challenging this

disciplinary action, defendant transferred him to an administrative position in retaliation.  (Id. at

5.)

   The disciplinary action at the heart of this litigation was in response to plaintiff's alleged

misconduct in the early morning hours of October 3, 2004.  (Id. at 2-4.)  On that date, according

to plaintiff's deposition testimony and records from plaintiff's internal investigation file, plaintiff

visited the Baltimore apartment of a woman whom he alleged to be his informant at roughly 3:00

a.m.  (Paper No. 28-2 Ex. 3 at 54-55, Ex. 4, Internal Investigation Complaint Sheet; Paper No. 29

at 4.)  Plaintiff claims that the informant had called him several times to request assistance

because someone was attempting to forcefully enter her apartment.  (Paper No. 28-2 Ex. 3 at 50-

52; Paper No. 29 at 4.)  Earlier in the evening, plaintiff had consumed several beers with the

supervisor of a parking garage where plaintiff works in his spare time as a security guard.  (Paper

No. 28-2 Ex. 3 at 44-45, 47-50; Paper No. 29 at 3.)

   Shortly after plaintiff arrived at the alleged informant's apartment, the informant called

911 to report that her boyfriend[1] was outside her apartment, "banging and kicking" on the door.

(Paper No. 28-2 Ex. 4, Internal Investigation Complaint Sheet; Paper No. 29 at 4.)  When

plaintiff heard the call over his radio, he responded that he was in the area and would handle the

call. (Paper No. 28-2 Ex. 4, Transcript of 911 Communications Tape, at 4, Sgt. Martini 10/03/04

---

[1]The informant later told officers that she and plaintiff had been dating for approximately
six months prior to the events of October 3, 2004.  (Paper No. 28-2 Ex. 4, Sgt. Martini 10/03/04
Report.)

Report; Paper No. 29 at 4.)  Plaintiff informed the 911 operator that the man outside her door

was the same police officer who just said he would handle the call.  (Paper No. 28-2 Ex. 4, Sgt.

Martini 10/03/04 Report.)  As a result, back-up officers were dispatched to the scene.  (Id.)

When the back-up officers arrived, they questioned both plaintiff and the informant.  (Id.)

They noted that plaintiff appeared intoxicated.  (Id.)  The officers placed plaintiff in the back of a

locked police car and placed him under guard.  (Paper No. 1 at 3; Paper No. 29 at 4.)  He

requested that he be permitted to consult with an attorney but was told that the matter would be

handled administratively and, as a result, he was not entitled to an attorney.  (Paper No. 1 at 3.)

Plaintiff was then ordered to submit to a Breathalyzer test.  (Paper No. 28-2 Ex. 3 at 65, Ex. 4,

Det. Lt. Hess 10/03/04 Report.)  The test revealed an alcohol content level of 0.12, which caused

the officers to conclude that plaintiff was intoxicated.  (Id.)

Plaintiff was immediately notified that he was the subject of an investigation.  (Id.)  He

was relieved of his police powers and suspended for a period of 85 days with pay.  (Id.)  Plaintiff

was reinstated around December 28, 2004.  (Paper No. 1 at 3; Paper No. 28-2 Ex. 3 at 73.)

According to plaintiff, on February 23, 2006, he was again suspended, this time for a period of

roughly six months, for the same incident.  (Paper No. 1 at 4.)  Defendant does not mention a

second suspension.

In March 2006, plaintiff was charged by the department with eighteen violations of

numerous department rules and regulations.  (Paper No. 28-2 Ex. 3 at 81, Ex. 5; Paper No. 29 at

4.)  Before a Trial Board hearing was held on these charges, plaintiff and the department

negotiated an agreement.  (Paper No. 28-2 at 6, Ex. 3 at 90-94, Ex. 6; Paper No. 29 at 4-5.)  On

August 31, 2006, plaintiff accepted discipline for three of the administrative charges[2] and was

subject to discipline consisting of ten days suspension without pay, ten days loss of leave,

involuntary transfer from the Organized Crime Division, in which he had previously worked, and

a severe letter of reprimand.  (Id.)

In October 2006, plaintiff filed an EEOC complaint challenging these disciplinary actions

as discriminatory.  (Paper No. 28-2 Ex. 1.)  In March 2007, plaintiff was transferred back to the

Organized Crimes Division, as he had been promised when he agreed to accept the discipline

offered, but in September 2007 he was re-assigned from enforcement work to administrative

duties.  (Id. Ex. 2 (Answer to Interrogatory No. 9).)  In his Answers to Interrogatories, plaintiff

says that he "learned that this was in response to my filing an EEOC complaint against the

department."  (Id.)  In his deposition, however, plaintiff testified that when he asked the reason

for his transfer to administrative duties, his supervising officer told him that "there might be a

problem with my testimony [the power to testify at trials as an officer of the court]."  (Id. Ex. 3 at

131-32.)  Although plaintiff was briefly allowed to return to enforcement work in early 2008,

plaintiff was permanently reassigned to administrative duties later that year.  (Id. Ex. 2 (Answer

to Interrogatory No. 9).)  Plaintiff alleges that these reassignments to administrative duty were in

retaliation for his filing of an EEOC complaint.  (Id.)

Plaintiff initiated the instant action in March 2008.  (Paper No. 1.)  He alleges racial

discrimination, gender discrimination, and retaliation, in violation of Title VII of the Civil Rights

Act.  (Id. at 4-5.)  In July 2008, the court granted the motion to dismiss filed by defendants

Mayor and City Council of Baltimore City.  (Paper Nos. 10-11.)  The court held that the lack of

---

[2]The other fifteen counts were dismissed.  (Paper No. 29 at 4.)

an employment relationship between plaintiff and the City of Baltimore precluded these

defendants from being held liable for plaintiff's Title VII claims.  (Paper No. 10 at 5.)  Thus, the

only defendant who remains is Police Commissioner Bealefeld.  Currently pending is defendant

Bealefeld's Motion for Summary Judgment.  (Paper No. 28.)

## II.   Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986).  A genuine issue remains "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  The only facts that are properly considered "material" are those

that might affect the outcome of the case under the governing law.  Id.  The party moving for

summary judgment has the burden of demonstrating the absence of any genuine issue of material

fact.  Fed. R. Civ. P. 56(c); Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir.

1987).

When considering a motion for summary judgment, the court views all facts and makes

all reasonable inferences in the light most favorable to the non-moving party.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The non-moving party, however,

may not rest on its pleadings, but must show that specific, material facts exist to create a

genuine, triable issue.  Id.; see also Celotex, 477 U.S. at 324.  On those issues for which the non-

moving party will have the burden of proof, it is his or her responsibility to oppose the motion

for summary judgment with affidavits or other evidence specified in the rule.  Fed. R. Civ. P.

56(e); Mitchell v. Data General Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to

make a showing sufficient to establish the existence of an essential element on which that party

will bear the burden of proof at trial, summary judgment is proper.  Celotex, 477 U.S. at 322-23.

### III.     Discussion

Defendant raises two main arguments in support of his Motion for Summary Judgment.

First, defendant argues that plaintiff cannot establish a prima facie case of racial or gender-based

discrimination.  (Paper No. 28-2 at 9-18.)  In his Response and Memorandum to Motion for

Summary Judgment, plaintiff concedes that he cannot establish a prima facie case of either type

of discrimination.  (Paper No. 29 at 1, 5.)  Accordingly, the court will grant summary judgment

for defendant on both of plaintiff's discrimination claims.

As for plaintiff's remaining claim, that defendant transferred him to administrative duties

in retaliation for his filing of an EEOC complaint, defendant argues that plaintiff cannot make

out a prima facie case of retaliation, and even if he could, defendant had a legitimate, non-

discriminatory reason for the transfer.  (Paper No. 28-2 at 18-22.)  A prima facie case of Title

VII retaliation requires proof of three elements: (1) that the plaintiff engaged in protected

activity; (2) that the employer took adverse action against him; and (3) that a causal connection

existed between the protected activity and the adverse employment action.  Hill v. Lockheed

Martin Logistics Mgmt., Inc., 354 F.3d 277, 298 (4th Cir. 2004).  Once the plaintiff establishes a

prima facie case of retaliation, the burden shifts to the defendant to present a legitimate, non-

discriminatory reason for the adverse employment action.  McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802-04 (1973); King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003).  If the

defendant presents such a reason, the burden shifts back to plaintiff to demonstrate that this

reason is mere pretext.  Id.

Here, the parties agree that plaintiff engaged in protected activity by filing an EEOC

claim in October 2006.  (Paper No. 28-2 at 19; Paper No. 29 at 8.)  They differ, however, over

whether plaintiff can satisfy the other two elements of a prima facie retaliation claim.  The

parties also disagree as to whether defendant has supplied a legitimate, non-pretextual, non-

retaliatory explanation for defendant's transfer of plaintiff to administrative duties.

First, defendant argues that plaintiff has failed to present sufficient evidence to establish

an adverse employment action.  (Paper No. 30 at 3-5.)  For the purposes of Title VII retaliation

claims, an adverse employment action is an action that a reasonable employee would find

"materially adverse," that is, an action that "well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination."  Burlington Northern & Santa Fe Ry. Co. v.

White, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted).  Here, the adverse

employment action alleged by plaintiff is his involuntary transfer from police enforcement work

to administrative duties in September 2007 and again, permanently, in late 2008.  (Paper No. 1 at

5; Paper No. 29 at 8.)  At his deposition, when asked how this transfer affected his conditions of

employment, plaintiff testified that he has not suffered any reduction in base salary or benefits,

but he is not allowed to earn any daily overtime, and his duties are now administrative in nature.

(Paper No. 28-2 Ex. 3 at 135-36.)  Defendant contends that, as a matter of law, a transfer to

administrative duties, without any reduction in base salary or benefits, does not constitute an

adverse employment action.  (Paper No. 30 at 4-5 (citing Holland v. Washington Homes, Inc.,

487 F.3d 208, 219 (citation and internal quotation marks omitted) (4th Cir. 2007) ("[A]bsent any

decrease in compensation, job title, level of responsibility, or opportunity for promotion,

reassignment to a new position commensurate with one's salary level does not constitute an

adverse employment action even if the new job does cause some modest stress not present in the

old position."); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376-77 (4th Cir. 2004)

("The mere fact that a new job assignment is less appealing to the employee, however, does not

constitute adverse employment action.")).)  Plaintiff did not have an opportunity to address this

issue, as defendant did not explicitly raise this argument until his Reply Memorandum in

Support of His Motion for Summary Judgment (Paper No. 30).[3]  Nonetheless, plaintiff testified

at his deposition that he has lost the opportunity to earn daily overtime, and his new position

clearly involves different job responsibilities.  (Paper No. 28-2 Ex. 3 at 135-36.)  As a result, the

court finds that there is sufficient evidence in the record to create a factual issue as to whether

plaintiff suffered an adverse employment action when he was involuntarily transferred to

administrative duties.

Next, defendant argues that plaintiff has failed to establish the third element of a prima

facie case of retaliation: a causal link between plaintiff's protected activity and defendant's

allegedly adverse employment action.  (Paper No. 28-2 at 18-22.)  Defendant points to the ten-

and-a-half month delay between plaintiff's filing of an EEOC complaint, in October 2006, and

the department's first allegedly retaliatory transfer of plaintiff to administrative duties, in

September 2007, and suggests that this delay precludes a finding that the two events were

causally connected.  (Id. at 21-22 (citing Jackson v. Maryland, 171 F. Supp. 2d 532, 545 n. 4 (D.

Md. 2001) (suggesting that a four month interval between the time when defendant received

---

[3]In his Response and Memorandum to Motion for Summary Judgment, all plaintiff said on this subject was that "it is difficult to not acknowledge that an adverse employment action occurred when the Plaintiff was involuntarily reassigned to administrative duties . . . ."  (Paper No. 29 at 8.)

notice of plaintiff's protected activity and the alleged retaliation was "not close enough temporally to infer a causal connection" without other evidence of a link between the two events); <u>VanDevander v. St. Mary's County Sheriff's Office, et al.</u>, No. CCB-99-1911, 2001 WL 589989, at *13 (D. Md. May 30, 2001) (citation omitted) ("Absent any other showing of a causal connection, the five-month time lapse is, in this case, too long to support a finding that [defendant] terminated [plaintiff] in retaliation for his protected activity."")); Paper No. 30 at 5-6 (citing <u>Causey v. Balog</u>, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation."); <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."); <u>Church v. Maryland</u>, 180 F. Supp. 2d 708, 745-46 (D. Md. 2002) ("[T]he lapse of fourteen months . . . between [plaintiff's] protected activity and her termination does not permit an inference that the two are causally connected."))).)  In addition, defendant contends that there is insufficient evidence in the record for a reasonable jury to conclude that plaintiff's involuntary transfer to administrative duties was in response to his filing of an EEOC complaint.  (Paper No. 28-2 at 19-21; Paper No. 30 at 6-7.)  Rather, as plaintiff himself testified in his deposition, defendant argues that plaintiff was transferred to administrative duties because of his loss of testimonial powers, a decision which was made by the Baltimore City State's Attorney's Office and not by anyone within the BPD.  (Paper No. 28-2 at 19-20.)

In response, plaintiff points out that the cases cited by defendant do not establish a bright-line period of time between protected activity and adverse employment action that would preclude a finding of retaliation.  (Paper No. 29 at 10.)  Accordingly, plaintiff urges the court to look at the circumstances of this particular case to determine whether, notwithstanding the lengthy delay between plaintiff's filing of an EEOC complaint and his reassignment to administrative duties, there is a genuine dispute of material fact as to whether these events were causally connected.  (Id.)  Plaintiff observes that, in making out a prima facie case of retaliation, plaintiffs may demonstrate a causal link between protected activity and adverse employment action through evidence of circumstances which justify an inference of retaliatory motive.[4]  (Id. at 7 (citing Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982)).)  In plaintiff's opinion, two main circumstances justify an inference that his involuntary transfer to administrative duties was retaliatory: (1) plaintiff's supervisor at the time, BPD Major Dan Lioi, allegedly told plaintiff that the transfer was in retaliation for his filing of an EEOC complaint; and (2) plaintiff accepted discipline for the October 3, 2004 incident in August of 2006 and had not engaged in any other misconduct since that time that would have justified his September 2007 reassignment.  (Id. at 10.)

------

[4]Plaintiff also points out that, under the McDonnell Douglas framework for disparate treatment cases, a plaintiff "need not prove discrimination" to make out a prima facie case "but may simply show certain facts which, if unexplained, would imply discriminatory motive." (Paper No. 29 at 6.)  Plaintiff asserts that "[c]ourts have overwhelmingly accepted the idea that similar lightened burdens should apply in a retaliation situation."  (Id. at 7.)  Nonetheless, even under such a "lightened burden" of production, a Title VII retaliation plaintiff must still prove some facts which imply a retaliatory motive.  As will be discussed in greater detail below, there is currently a lack of any evidence in the record that would justify an inference of retaliatory motive on defendant's part.

Plaintiff has failed to create a genuine issue of material fact as to whether his involuntary transfer to administrative duties was causally related to his engaging in protected activity.  A party opposing a motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); accord Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985) ("Though the burden of proof rests initially with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party must produce 'specific facts showing that there is a genuine issue for trial,' rather than resting upon the bald assertions of his pleadings."), overruled on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228, 238 n.2 (1989).

Here, plaintiff does not attach or cite a single exhibit or affidavit in his Response and Memorandum to Motion for Summary Judgment.  (Paper No. 29.)  Rather, he asks the court to find that a reasonable jury could infer a causal connection between his EEOC complaint and his transfer to administrative duties based solely on (a) his bald assertion that his supervising officer told him that the two events were related, and (b) his claim that he did not engage in any further misconduct between his filing of an EEOC complaint, in October 2006, and his transfer, in September 2007, that would justify such action.  (Id. at 10.)  These unsupported allegations are simply insufficient to demonstrate "a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

On the contrary, the evidence in the record establishes a relatively lengthy delay between the protected activity and the alleged retaliation, coupled with no other evidence of a link between the two events.  The transfer occurred ten-and-a-half months after plaintiff filed his EEOC complaint.  Compare Paper No. 28-2 Ex. 1 with id. Ex. 2 (Answer to Interrogatory No. 9).

11

Although the cases cited by defendant do not establish a fixed period of time after which an

adverse employment action can no longer be found to be in retaliation for protected activity, they

do clearly articulate that a delay of even a few months severely belies a claim that the two events

were causally related.  See, e.g., Dowe, 145 F.3d at 657 (observing that a long delay between

protected activity and an adverse employment action "negates any inference that a causal

connection exists between the two").  In addition, plaintiff asserts that his transfer must have

been retaliatory because there was no other circumstance, such as further misconduct on his part,

that would have justified such a transfer.  (Paper No. 29 at 6, 10.)  There is evidence in the

record, however, that the State's Attorney's Office removed plaintiff's testimonial powers

around the same time that the BPD transferred him to administrative duties.[5]  In fact, plaintiff

testified at his deposition that his supervising officer told him that the transfer was in response to

this loss of testimonial powers (Paper No. 28-2 Ex. 3 at 131-34), although he has stated on other

occasions that his supervising officer told him he was being transferred because of his filing of

an EEOC complaint (Paper No. 28-2 Ex. 2 (Answer to Interrogatory No. 9); Paper No. 29 at 10).

Based on this record, there is simply insufficient evidence to raise a genuine issue of material

fact as to the causal link between plaintiff's protected activity and defendant's allegedly adverse

employment action.

    As a result, plaintiff cannot establish a prima facie case of retaliation under Title VII of

the Civil Rights Act.  See Hill, 354 F.3d at 298 (articulating the three elements of a prima facie

---

[5]It is unclear from the record exactly when plaintiff's testimonial powers were removed; however, plaintiff testified at his deposition, in reference to his loss of testimonial powers and his transfer to administrative duties, that "All this occurred from when I filed my lawsuit.  All these events happened after that did, in that domino effect."  (Paper No. 28-2 Ex. 3 at 134.)

case of retaliation).  Accordingly, the court must grant summary judgment in defendant's favor.

FED. R. CIV. P. 56(c); see also Celotex, 477 U.S. at 322-23 (holding that summary judgment is

appropriate where a party fails to make a showing sufficient to establish the existence of an

essential element on which that party will bear the burden of proof at trial); Dowe, 145 F.3d at

657 ("To survive summary judgment . . . [plaintiff] must have evidence from which a reasonable

factfinder could conclude that a causal connection exists between the protected activity and the

adverse action."); Church, 180 F. Supp. 2d at 745 (granting summary judgment on plaintiff's

retaliation claim because, in addition to the fourteen-month delay between plaintiff's protected

activity and defendant's materially adverse employment action, plaintiff "ha[d] not presented

any evidence (or supported an inference) connecting her protected activity and her termination").

The court must also note, however, that even if plaintiff had presented sufficient evidence

to establish a prima facie case of retaliation, defendant has offered evidence of a legitimate, non-

discriminatory reason for transferring plaintiff to administrative duties (namely, his loss of

testimonial powers), and plaintiff has not produced any evidence of pretext.  Cf. McDonnell

Douglas, 411 U.S. at 802-04 (1973); King, 328 F.3d at 150-51.  Plaintiff contends that he could

have continued to engage in enforcement work if he had been paired up with other officers who

did have the power to testify at trial.  (Paper No. 29 at 8-9.)  This argument does not suggest,

however, that defendant's purported reason for transferring plaintiff to administrative duties was

pretextual.  It merely demonstrates that defendant might have had other options for how to

respond to plaintiff's loss of testimonial powers.  In other words, plaintiff has failed to rebut the

legitimate, non-discriminatory explanation provided by defendant for his allegedly retaliatory

conduct; thus, defendant is entitled to judgment as a matter of law.  <u>McDonnell Douglas</u>, 411

U.S. at 802-04 (1973); <u>King</u>, 328 F.3d at 150-51.

In sum, plaintiff concedes that he cannot make out a prima facie case of racial or gender-

based discrimination.  As for plaintiff's retaliation claim, plaintiff has not presented any

evidence linking his filing of an EEOC complaint to his transfer to an administrative position;

therefore, he cannot establish a prima facie case of discrimination.  In addition, defendant has

presented a legitimate, non-discriminatory reason for plaintiff's reassignment – plaintiff's loss of

his power to testify at trials as an officer of the court – which plaintiff has failed to establish as

pretextual.  Accordingly, the court must grant summary judgment in favor of defendant on all of

plaintiff's claims.

## IV.    <u>Conclusion</u>

For the foregoing reasons, defendant's Motion for Summary Judgment (Paper No. 28) is

GRANTED.  A separate order shall issue.


Date:   09/02/09                                              /s/
                                                    Beth P. Gesner
                                                    United States Magistrate Judge